United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JARMAAL SMITH,

         Plaintiff,

   v.

DR. N. ADAMS, et al.,

         Defendants.

_____/

No. C 10-4389 CW (PR)

ORDER OF SERVICE AND
PARTIAL DISMISSAL WITH
LEAVE TO AMEND

INTRODUCTION

Plaintiff, a state prisoner, has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging claims of deliberate indifference to his serious medical needs and retaliation. Plaintiff has also filed a motion seeking preliminary injunctive relief (docket no. 9).  His motion for leave to proceed in forma pauperis has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred at Pelican Bay State Prison (PBSP) which is located in this judicial district.  See 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants: PBSP Licensed Vocational Nurses (LVN) B. Stone and A. Anders, PBSP Physician N. Adams, PBSP Nurse Practitioner S. Risenhoover and PBSP Correctional Officers R. Escobar and Hailey.  Plaintiff seeks monetary damages and injunctive relief.

DISCUSSION

I.   Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity

or officer or employee of a governmental entity. 28 U.S.C.
§ 1915A(a).  In its review, the court must identify any cognizable
claims and dismiss any claims that are frivolous, malicious, fail
to state a claim upon which relief may be granted or seek monetary
relief from a defendant who is immune from such relief.  Id.
§ 1915A(b)(1), (2).  Pro se pleadings must be liberally construed.
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
1988).

   To state a claim under 42 U.S.C. § 1983, a plaintiff must
allege two essential elements: (1) that a right secured by the
Constitution or laws of the United States was violated, and
(2) that the alleged violation was committed by a person acting
under the color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988).

II.  Factual Background

   Plaintiff suffers from "intermitten [sic] migrane [sic]
headaches," "involuntary nerve twitching" and chest pains.
(Compl. at 2, 4.)  While at Corcoran State Prison in August 2008,
Plaintiff was first prescribed Gabapentin to treat his migraine
headaches and nerve twitching.

   On December 2, 2009, Plaintiff was transferred to PBSP.  The
medications he had been previously prescribed were automatically
continued for the first thirty days at PBSP.  His medications
included 800 milligrams of Gabapentin every four hours.  Plaintiff
claims that Defendants Stone and Anders denied Plaintiff medical
treatment by failing to administer Plaintiff's prescribed dosage
of Gabapentin in December 2009.  Specifically, Plaintiff claims
that Stone and Anders administered a liquid, rather than pill,

United States District Court
For the Northern District of California

form of Gabapentin to him, but knowingly failed to provide him consistently with the full measurement of 16cc of liquid Gabapentin, which is equivalent to the 800 milligram pill.

On December 22, 2009, Plaintiff confronted Defendant Stone about not giving him the prescribed dosage of Gabapentin, and he asked for her name -- which she did not reveal -- so that he could file a complaint against her. (Id. at 14.)  Defendant Stone took back Plaintiff's morning medication, and she did not administer his afternoon medication. (Id. at 15.)  Plaintiff claims he "suffered a minor headache . . . ." (Id.)

Also on December 22, 2009, Plaintiff's Gabapentin prescription was amended from the "full 30 days" of coverage to "7 days" of coverage. (Id.)  Plaintiff alleges that Defendant Stone "manipulated the doctor into amending Plaintiff's medication out of retaliation against Plaintiff for disputing the amount of the medication," and also for "asking for the LVN's name, with the indication that he would file a complaint against her." (Id. at 16.)  That same day, Plaintiff filed a grievance against Defendant Stone.

On December 23, 2009, Defendant Stone administered Plaintiff's morning liquid dose of Gabapentin at 14 ccs instead of 16 ccs. Plaintiff did not mention the discrepancy to Defendant Stone.

On December 25, 2009, Defendant Anders administered Plaintiff's evening liquid dose at 14 ccs instead of 16 ccs. Plaintiff informed Defendant Anders of the discrepancy; however, nothing was done to correct it.

On December 28, 2009, Plaintiff asked Defendant Anders why his medication was not being administered at the prescribed schedule

3

1    of every four hours.  Plaintiff alleges Defendant Anders "lied to
2    Plaintiff," stating that his medication was to be administered
3    every twelve hours, not every four hours.  (Id. at 17.)

4        On December 29, 2009, Defendant Anders administered the
5    evening rounds of medication; however, he did not administer
6    Gabapentin to Plaintiff.

7        On December 30, 2009, Plaintiff asked Defendant Anders about
8    his medication.  Defendant Anders replied that Plaintiff's
9    medication had been amended "from 3 a day to twice daily, and only
10   for a seven day period commencing on December 22, 2009." (Id. at
11   19.)  Plaintiff asked Defendant Anders to issue a "bridge order,"
12   to continue his Gabapentin prescription, which Defendant Anders
13   refused to do.  That same day, Plaintiff filed a grievance against
14   Defendant Anders.

15       On January 5, 2010, Defendant Adams evaluated Plaintiff.  By
16   the time Plaintiff saw Defendant Adams, "at least a week" had
17   passed "since his medication had expired . . . ." (Id. at 20.)
18   During the appointment, Plaintiff requested a prescription for
19   Gabapentin and that he see a specialist for his migraine headaches
20   and nerve twitching.  Defendant Adams looked through Plaintiff's
21   file and stated that "she did not see any recommendations from the
22   neurologist regarding 'Gabapentin.'" (Id. at 22.)  Plaintiff
23   asked Defendant Adams to search the part of the file that
24   corresponded to 2008.  Defendant Adams replied that she did not
25   need to review Plaintiff's file because she could not prescribe
26   Gabapentin regardless, in that PBSP does not issue that medication
27   for headaches.  (Id. at 23.)  Defendant Adams also told Plaintiff
28   "he wasn't going to die if he did not have medication for his

                                    4

headaches, and that the best thing about migraine headaches is that they do not occur every day, so he would be alright without medication." (<u>Id.</u> at 24.)  Defendant Adams further stated that "if you just let migrane [sic] happen eventually they'll stop altogether." (<u>Id.</u> at 25.)  Plaintiff told Defendant Adams that "he believed she was lying and that he was going to file a complaint against her." (<u>Id.</u>)  Defendant Adams responded,

> File your complaint, it's not going to change anything because they probably wouldn't approve it even if I tried to prescrib [sic] it to you.  They don't have medication to be dishing out to people like you, you're a burden on the state and we have to cut back on the medication that we issue.

(<u>Id.</u>)  That same day, Plaintiff filed a grievance against Defendant Adams.[1]

On January 13, 2010, Defendant Risenhoover discontinued the Tylenol #3 pills prescribed by Defendant Adams without consulting Plaintiff.

On January 14, 2010, Plaintiff "believes he submitted an emergency health care request (sick call slip) requesting to have his Tylenol #3 medication reinstated." (<u>Id.</u> at 26.)  Within a week, Plaintiff was seen by a triage nurse.  Plaintiff alleges the nurse was supposed to refer Plaintiff to a physician; however, three weeks passed without Plaintiff being seen by a physician.  Plaintiff submitted another "sick call slip" with "EMERGENCY" written at the top. (<u>Id.</u> at 27.)

---

[1] Plaintiff writes that "on this same day of January 7, 2010 Plaintiff filed an administrative grievance against Dr. Adams." (Compl. at 26.)  Because Plaintiff has alleged that his meeting with Dr. Adams occurred on January 5, 2010, the Court assumes that he filed his grievance on January 5.

United States District Court

For the Northern District of California

On January 27, 2010, Plaintiff was interviewed by Nurse Labans regarding the grievances filed against Defendants Stone, Anders and Adams.

On February 25, 2010, Plaintiff was seen by Defendant Risenhoover in response to his sick call slips.  Plaintiff inquired why he had not been seen earlier, and Defendant Risenhoover replied that "she did not think his condition was serious enough to warrant immediate attention . . . ."  (Id. at 28.)  Defendant Risenhoover also stated, "I don't believe you need Gabapentin for your condition and that medication is not issued by" the California Department of Corrections and Rehabilitation (CDCR).  (Id. at 29.) Plaintiff responded that he had been prescribed Gabapentin for almost two years by CDCR medical staff.  Plaintiff alleges Defendant Risenhoover did not look at his file, and "did not appear to be aware of any of the information that Plaintiff was conveying to her."  (Id. at 30.)

Plaintiff also "attempted to explain to this nurse that he had recently been experiencing chest pain and cramping around his heart area," that in August 2008 he was hospitalized for an irregular heartbeat -- the origin of which had not been determined -- and that he had been advised to tell prison staff to refer him to a cardiologist.  (Id. at 30.)  He then asked Risenhoover to refer him to a cardiologist because "his condition was worstening [sic]," but Risenhoover responded that Plaintiff would have to submit another sick call slip because he could only talk about one issue at a time.  (Id. at 31.)  Plaintiff explained that "it took him almost 2 months for him to be seen on this issue and he was having

really bad cramping around his heart," and that "he was concerned that he would not make it another 2 months." (Id.)

Defendant Hailey then opened the office door and informed Defendant Risenhoover she had "5 minutes." (Id.)  Plaintiff asked Defendant Risenhoover whether she had reviewed his file prior to his visit.  Defendant Risenhoover responded, "I don't need to, migraines are not treated with Gabapentin." (Id. at 32.) Plaintiff repeated that he was not receiving medication to treat his headaches, to which Defendant Risenhoover responded, "I know you've probably been taking somebody else's medications." (Id.) Defendant Hailey again opened the door and announced that Plaintiff's time was up.  Defendant Risenhoover did not prescribe Plaintiff any medication.

On February 26, 2010, Plaintiff's three grievances were denied at the first level of review by Chief Medical Officer M. Sayre.

On March 3, 2010, Plaintiff filed a grievance against Defendant Hailey.

On March 4, 2010, Plaintiff was informed by an unidentified LVN that Defendant Risenhoover had ordered a feces test for Plaintiff.  Plaintiff refused to take the test because "he did not discuss anything with [Defendant Risenhoover] relating to his bowel movements." (Id. at 33.)

On March 9, Plaintiff filed a grievance against Defendant Risenhoover; however, on March 11, 2010, PBSP "refused to process" Plaintiff's grievance because of his three "outstanding" grievances.  Plaintiff resubmitted his grievance that same day.  On March 12, 2010, Plaintiff's grievance was returned a second time

for the same reason.  Plaintiff was advised that if he resubmitted the grievance, "he would not receive it back."  (Id. at 35.)

On March 18, 2010, Plaintiff complained to a LVN that he had been experiencing "chest pain" and "very bad cramping around his heart . . . all day."  (Id.)  The LVN notified Defendant Escobar, who responded to the scene.  Plaintiff was escorted to the "B" Facility clinic.  Plaintiff described his heart history to Defendant Escobar, and explained that his conditions were worsening.  Plaintiff also explained that around 12:00 p.m. that day, he had suddenly felt "out of breath."  (Id. at 36.)  Defendant Escobar established that Plaintiff's "pulse was low."  (Id.) Defendant Escobar explained that Plaintiff's heartbeat was probably low "because he worked out."  (Id.)  Plaintiff responded that he does not work out.  Defendant Escobar "accused Plaintiff of lying about not exercising and that this condition was probably not as bad as it seemed."  (Id.)  Defendant Escobar sent Plaintiff back to his cell without either treatment or a referral to PBSP's "CTC"[2] facility, which he describes as "the institution's hospital used for treating emergency situations."  Plaintiff alleges that Defendant Escobar did not seek to admit him to the CTC facility "for punitive purposes and with malicious intentions," which is "evidenced by the fact that [he] mocked Plaintiff, did not take him seriously and accused Plaintiff of lying."  (Id. at 39.)

Later that night, Plaintiff became lightheaded while experiencing cramping around his heart.  He then "collapsed to the floor of his cell."  (Id. at 37.)  A correctional officer contacted medical staff, and Plaintiff was seen by a nurse.

---

[2] Plaintiff does not explain what CTC stands for.

On March 27, 2010, Plaintiff experienced a migraine headache and submitted another sick cell slip.

On March 28, 2010. Plaintiff submitted a grievance against Defendant Escobar.

On April 1, 2010, Plaintiff was seen by Defendant Risenhoover for a second time.  Plaintiff explained he had been experiencing "very bad cramping around his heart" and an "accelerated heartbeat." (<u>Id.</u> at 40.)  Plaintiff requested a referral to a cardiologist.  Defendant Risenhoover responded, "Who's going to pay for it?  The state doesn't have that kind of money." (<u>Id.</u> at 41.)  Defendant Risenhoover then stated, "I don't believe your condition is serious enough to refer you to a cardiologist." (<u>Id.</u>)  Plaintiff also attempted to request medication for his migraine headaches based on a specialist's recommendations, but Defendant Risenhoover replied that "we don't actually have to follow their recommendations." (<u>Id.</u> at 42.)

Plaintiff states, "To deal with these headaches without remedy . . . amounts to torture because Plaintiff is made to endure an extremely painful condition when he doesn't have to." (<u>Id.</u> at 47.)  He adds that his nerve twitching condition is "painful at times and causes enormous discomfort and significantly effects [sic] Plaintiff's daily activities." (<u>Id.</u> at 49.)  Finally, he states, "Plaintiff's heart condition not only causes him pain from cramping but it also causes him a great deal of fear that he will . . . [have] a heart attack and die or suffer a stroke." (<u>Id.</u> at 49.)

//

//

//

9

1   III.  Legal Claims

2        A.   Deliberate Indifference to Serious Medical Needs

3        Deliberate indifference to serious medical needs violates the

4   Eighth Amendment's proscription against cruel and unusual

5   punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976);

6   McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

7   on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133,

8   1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771

9   (9th Cir. 1986).  A determination of "deliberate indifference"

10  involves an examination of two elements: the seriousness of the

11  prisoner's medical need and the nature of the defendant's response

12  to that need.  See McGuckin, 974 F.2d at 1059.  A "serious" medical

13  need exists if the failure to treat a prisoner's condition could

14  result in further significant injury or the "unnecessary and wanton

15  infliction of pain."  Id. (citing Estelle, 429 U.S. at 104).  A

16  prison official is deliberately indifferent if he or she knows that

17  a prisoner faces a substantial risk of serious harm and disregards

18  that risk by failing to take reasonable steps to abate it.  Farmer

19  v. Brennan, 511 U.S. 825, 837 (1994).

20       Assuming Plaintiff's medical needs were "serious," Plaintiff

21  must allege facts which support a finding of deliberate

22  indifference to those needs by Defendants Stone, Anders, Adams,

23  Escobar, Risenhoover and Hailey.  Such indifference may appear when

24  prison officials deny, delay or intentionally interfere with

25  medical treatment, or it may be shown in the way in which prison

26  officials provide medical care.  See McGuckin, 974 at 1062.

27       Here, according to Plaintiff's allegations, Defendants Stone

28  and Anders denied Plaintiff medical treatment by failing to

United States District Court
For the Northern District of California

administer Plaintiff's prescribed dosage of Gabapentin, and Defendant Adams and Risenhoover denied Plaintiff medical treatment by failing to treat Plaintiff's migraine headaches and nerve twitching.  Additionally, according to Plaintiff's allegations, Defendants Risenhoover and Escobar denied Plaintiff medical treatment by failing to review Plaintiff's medical records to confirm that he had a heart condition and had been advised to see a cardiologist.

Accordingly, Plaintiff's allegations present a cognizable claim of deliberate indifference to serious medical needs against Defendants Stone, Anders, Adams, Risenhoover and Escobar for their failure to provide Plaintiff with medical care in response to his symptoms.  See Lolli v. County of Orange, 351 F.3d 410, 420-21 (9th Cir. 2003) (holding that a jury could infer that correctional officers' failure to provide medical care in response to detainee's extreme behavior, sickly appearance and statements that he was diabetic and needed food demonstrated deliberate indifference).

The complaint does not state a claim for relief against Defendant Hailey, because Defendant Hailey is not linked specifically to the allegations in the body of the complaint. Liability may be imposed on an individual defendant under § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes

the deprivation of which the plaintiff complains.  <u>See Leer</u>, 844
F.2d at 633.  The inquiry into causation must be individualized and
focus on the duties and responsibilities of each individual
defendant whose acts or omissions are alleged to have caused a
constitutional deprivation.  <u>See id.</u>  Sweeping conclusory
allegations will not suffice; the plaintiff must instead set forth
specific facts as to each individual defendant's deprivation of
protected rights.  <u>Id.</u> at 634.

While Plaintiff alleges that Defendant Hailey informed
Defendant Adams of the time remaining in Plaintiff's appointment,
Plaintiff has not linked Defendant Hailey to his deliberate
indifference claims.  As such, Plaintiff has failed to state a
cognizable deliberate indifference claim against Defendant Hailey.
Accordingly, Plaintiff's claim against Defendant Hailey is
DISMISSED with leave to amend.  Plaintiff may reassert his
deliberate indifference claim against Defendant Hailey in an
amendment to the complaint if he can, in good faith, allege facts
demonstrating that Defendant Hailey knew Plaintiff faced a
substantial risk of serious harm and disregarded that risk by
failing to take reasonable steps to abate it.  <u>Farmer</u>, 511 U.S. at
837.

B.   Retaliation

"Within the prison context, a viable claim of First Amendment
retaliation entails five basic elements:  (1) An assertion that a
state actor took some adverse action against an inmate (2) because
of (3) that prisoner's protected conduct, and that such action
(4) chilled the inmate's exercise of his First Amendment rights,

and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  To prove retaliation, a plaintiff must show that the defendants took adverse action against him or her that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Plaintiff alleges that, because he asked for Defendant Stone's name and indicated that he would file a complaint against her, she retaliated against him by manipulating the doctor into changing the remaining length of his Gabapentin prescription from thirty to seven days.  (Compl. at 16.)  Plaintiff has not alleged facts sufficient to support each of the elements of retaliation.  In addition, his conclusory allegation of wrongdoing on the part of Defendant Stone -- based on her manipulating the doctor -- is speculative and thus insufficient to state a cognizable claim for relief.  Furthermore, the alleged retaliation occurred prior to Plaintiff filing his grievance against Defendant Stone.  Thus, without proof that a grievance was filed prior to the manipulation of his medication, Plaintiff cannot show that this adverse action against him was because of a protected conduct.  Plaintiff has failed to state a cognizable retaliation claim against Defendant Stone.

Accordingly, Plaintiff's retaliation claim against Defendant Stone is DISMISSED with leave to amend.  Plaintiff may reassert his retaliation claim against Defendant Stone in an amendment to the complaint if Plaintiff can, in good faith, allege that he engaged

in constitutionally protected conduct, that Defendant Stone took adverse action against him in retaliation for the protected conduct, and that Plaintiff suffered harm as a result of the retaliation.

IV.  Motion for a Preliminary Injunction

Plaintiff seeks immediate injunctive relief to order Defendants Adams and Risenhoover to provide Plaintiff with Gabapentin at 800 mgs. to treat his migraine headaches.  (Mot. for Prelim. Inj. at 1.)  Prior to granting a preliminary injunction, however, notice to the adverse party is required.  See Fed. R. Civ. P. 65(a)(1). Therefore, a motion for preliminary injunction cannot be decided until the parties to the action are served.  See Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983).  A temporary restraining order (TRO) may be granted without written or oral notice to the adverse party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant's attorney certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required.  See Fed. R. Civ. P. 65(b).  Although Plaintiff swears under penalty of perjury that the information contained in his pleadings is true and correct, and thus the pleadings may be deemed affidavits, and although the first pleading describes Plaintiff's circumstances with a fair amount of specificity, it does not clearly appear from the pleadings that Plaintiff will suffer

immediate and irreparable injury before Defendants can be given an opportunity to respond.

Plaintiff claims that Defendants Adams and Risenhoover have terminated his prescription for Gabapentin, which he first received on August 12, 2008.  Plaintiff claims that since his Gabapentin medication "was discontinued he has experienced migraine headaches" on at least thirteen occasions, the most recent migraine headache occurring on February 21, 2011.  (Mot. for Prelim. Inj. at 5.) While a migraine headache can be a debilitating and painful condition, the pleadings do not clearly show that Plaintiff will suffer irreparable injury.

In light of these circumstances, the Court directs Defendants Adams and Risenhoover to respond to the motion for preliminary injunction as directed below.

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.    Plaintiff states a cognizable Eighth Amendment claim against Defendants Stone, Anders, Adams, Risenhoover and Escobar for deliberate indifference to serious medical needs.

2.    Plaintiff's Eighth Amendment claim against Defendant Hailey for deliberate indifference to serious medical needs is DISMISSED with leave to amend as indicated above.

3.    Plaintiff's First Amendment claim against Defendant Stone for retaliation is DISMISSED with leave to amend as indicated above.

4.    Within <u>thirty (30) days</u> of the date of this Order, Plaintiff may file an amended Eighth Amendment claim against Defendant Hailey and an amended First Amendment claim against

15

United States District Court
For the Northern District of California

Defendant Stone as set forth above in Section III(A) and (B) of this Order.  (<u>Plaintiff shall resubmit only those claims and not the entire complaint</u>.)  The amended claims must be submitted on an amendment to the complaint.  It must include the caption as well as the civil case number of this action (C 10-4389 CW (PR)) and the words AMENDMENT TO THE COMPLAINT on the first page.  The failure to do so will result in the dismissal without prejudice of the Eighth Amendment claim against Defendant Hailey and the First Amendment claim against Defendant Stone.

5.   The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (docket no. 1) and a copy of this Order to <u>PBSP Licensed Vocational Nurses B. Stone and A. Anders, PBSP Physician N. Adams, PBSP Nurse Practitioner S. Risenhoover and PBSP Correctional Officer R. Escobar.</u>  The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco.  Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

6.   Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint.  Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form.  If service is waived, this action will proceed as if Defendants had been served on the date that the

16

waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before sixty (60) days from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due sixty (60) days from the date on which the request for waiver was sent or twenty (20) days from the date the waiver form is filed, whichever is later.

7.   Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

a.   No later than ninety (90) days from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

b.   Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than sixty (60) days after the date on which Defendants' motion is

17

filed.   The Ninth Circuit has held that the following notice should be given to <u>pro se</u> plaintiffs facing a summary judgment motion:

> The defendant has made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See <u>Rand v. Rowland</u>, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce <u>evidence</u> in support of those allegations when he files his opposition to Defendants' dispositive motion.  Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

declaration.  Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c.   Defendants shall file a reply brief no later than <u>thirty (30) days</u> after the date Plaintiff's opposition is filed.

d.   The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

8.   The Court further orders as follows:

a.   On the same date their answer is due, Defendants shall respond to the motion for preliminary injunction (docket no. 9).  The response to the motion for preliminary injunction shall be supported by adequate factual documentation and shall conform in all respects to the Federal Rules of Civil Procedure, and all papers filed with the Court shall be promptly served on Plaintiff.

b.   Plaintiff may file a reply within <u>fourteen (14) days</u> of the date Defendants' response is filed.  Plaintiff's reply should be supported by factual documentation and should demonstrate why Plaintiff satisfies the following standard:

Under the traditional test for granting preliminary injunctive relief, Plaintiff must: (1) establish a strong likelihood of success on the merits; (2) show the possibility of irreparable injury to Plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring Plaintiff; and (4) show that granting the injunction favors the public interest.  <u>See Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1200 (9th Cir. 1980).

The Prison Litigation Reform Act requires further that preliminary injunctions relating to prison conditions "be narrowly

19

drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." 18 U.S.C. § 3626(a)(2).

9.    Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure.  Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

10.   All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

11.   It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

12.   Extensions of time are not favored, though reasonable extensions will be granted.  Any motion for an extension of time must be filed no later than <u>fifteen (15) days</u> prior to the deadline sought to be extended.

IT IS SO ORDERED.

DATED:  10/17/2011

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JARMAAL SMITH,

        Plaintiff,

  v.

NANCY ADAMS et al,

        Defendant.
_____/

Case Number: CV10-04389 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 17, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jarmaal  Smith T76804
PBSP, ASU D-#1
P.O. Box 7500
Crescent City,  CA 95532

Dated: October 17, 2011

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

United States District Court
For the Northern District of California

21