IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JARMAAL SMITH,                          No. C 10-4389 CW (PR)

      Plaintiff,                    ORDER GRANTING DEFENDANTS'
                                        MOTION FOR SUMMARY JUDGMENT;
    *v.*                               ADDRESSING NON-DISPOSITIVE
                                        AND DISCOVERY-RELATED MOTIONS
DR. NANCY ADAM, et al.,
                                        (Docket nos. 27, 31, 33, 34,
      Defendants.                   35, 36, 42, 50, 52, 53)

═══════════════════════════════════/

INTRODUCTION

Plaintiff, a state prisoner incarcerated at Pelican Bay State Prison (PBSP), filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by medical practitioners at PBSP.

Defendants Dr. Nancy Adam, Family Nurse Practitioner (FNP) Sue Risenhoover, Registered Nurse (RN) Joseph Escobar, and Licensed Vocational Nurses (LVN) Rebecca Stone and Andrey Andrsh have filed a motion for summary judgment. Plaintiff has opposed the motion and Defendants have filed a reply. Also pending are various non-dispositive motions filed by the parties.

For the reasons discussed below, the Court GRANTS Defendants' motion for summary judgment.

BACKGROUND

The following facts are taken from the parties' verified pleadings, declarations and attached documentary evidence. They are undisputed unless otherwise noted.

Since February 2006, Plaintiff has been treated by prison

1

doctors for his intermittent migraine headaches and facial nerve twitching.  His medical records reflect that, through July 2008, he was prescribed the following medications at the noted correctional institutions for his headaches:

High Desert State Prison:

2/06 - Motrin 400 mgs., Naproxen 500 mgs.

California State Prison-Sacramento:

8/06 - Robaxin 50 mg.

9/06 - Elavil 10-25 mg.

11/06 - Naproxen 500 mgs., Tylenol 975 mgs.

1/07 - Isomethept/Dichloralph

2/07 - Midrin, Tramadol 50 mg., Naproxen 500 mgs.

California Substance Abuse Treatment Facility (CSATF):

5/07 - Ultram 50 mg.

7/07 - Robaxin 750 mgs., Methocarbamol 750 mgs.

9/07 - Methocarbamol 750 mgs., Ultram 50 mg., Tramadol 50 mgs.

10/07 - Methocarbamol 750 mg.

11/07 - Imitrex 100 mg., Methocarbamol 750 mg.

12/07 - Motrin 800 mg.

California State Prison-Corcoran (Corcoran):

5/08-6/08 - Acetaminophen/Codein no. 3, Ibuprofen 800 mgs.

7/08 - Acetaminophen/Codein no. 3, Ibuprofen 800 mgs., Tramadol 30 mgs.

Pl.'s Decl. Supp. Opp'n Summ. J. (Pl.'s Decl.) ¶ 41.

In December 2007, a doctor at CSATF referred Plaintiff for a neurology consultation for his complaints of facial numbness and twitching.  Opp'n Ex. J at 181.  Plaintiff was transferred to Corcoran before the consultation took place.  On August 12, 2008,

1   while incarcerated at Corcoran, Plaintiff had a neurologic

2   consultation.  The consulting neurologist described Plaintiff's

3   presenting illness as follows:

> This is a 27-year-old male who is complaining of
> twitching of various portions of the body.  He also
> complains of some headaches.  Apparently in 2006, was
> stabbed on the left cheek and subsequently began having
> facial twitching.  The twitching, however, extended to
> the rest of the head, the throat, the neck, and the
> upper and lower extremity.  The patient had an
> electrodiagnostic studies [sic] done by Dr. Lin and
> there was normal nerve conduction study of the left
> upper extremity and of the left face.  He was placed on
> Neurontin but did not tolerate it because of nausea,
> vomiting and of abdominal pains.  The patient complains
> of numbness in various portions to the body.  In 2006,
> had an MRI scan because "he was assaulted by a C.O."
> The scan was reportedly negative although we do not have
> the formal report.
>
> The patient also complains of chest pains and was
> recently sent to a hospital for a same workup, it was
> negative but he is now complaining of numbness of the
> veins where he had been punctured.

15  Opp'n Ex. K at 188.

16      The neurologist's examination of Plaintiff was unremarkable.

17  He summarized his impressions as follows: "Diffuse twitching and

18  total headache etiology unclear."  Id. at 189.  He recommended

19  that Plaintiff be prescribed Lyrica, 50 mg. four times a day, "to

20  see if this neurotic pain and the twitching might respond."  Id.

21  Lyrica is used to treat pain from damaged nerves.  He also

22  recommended blood tests and an MRI scan of Plaintiff's head.

23      In early September 2008, Plaintiff's physician at Corcoran

24  prescribed Gabapentin, 300 mg. three times a day, for Plaintiff.

25  Opp'n Ex. K at 190.  Gabapentin (brand name Neurontin) is a drug

26  that is approved to prevent seizures and treat post-herpetic

27  neuralgia.  Decl. Michael Sayre, M.D., Supp. Mot. Summ. J. (Sayre

28  Decl.) ¶ 6 & Ex. A.  Headaches and neuropathic pain are off-label

United States District Court
For the Northern District of California

uses of Gabapentin.  Id.  Additionally, Plaintiff's doctor
continued his prescriptions to treat his headaches with
Acetaminophen/Codein no. 3 four times a day, and Ibuprofen, 800
mgs. four times a day.  Opp'n Ex. K at 192.  In November 2008,
the doctor increased the Gabapentin prescription to 600 mgs. three
times a day "for facial twitching" and prescribed Tramadol, a pain
reliever, 50 mgs. four times a day, for Plaintiff's headaches.
Id. at 193.

Plaintiff was transferred to PBSP on December 2, 2009.
Pursuant to California Department of Corrections and
Rehabilitation (CDCR) policy, his existing prescriptions were
continued for thirty days upon his arrival.  Sayre Decl. ¶ 3.  The
liquid form of Gabapentin was ordered, which equaled 16 cc three
times a day.  Id. & Decl. Valerie Ly, Esq., Supp. Mot. Summ. J.
(Ly Decl.) Ex. A.

On December 22, 2009, FNP Risenhoover, with the approval of
Dr. Sayre, the Chief Medical Officer at PBSP, changed the order
for Gabapentin to be given two times a day instead of three.  Ly
Decl. Exs. B & E.  According to Dr. Sayre, the order was changed
to twice a day because a third pill pass was not indicated for
Plaintiff's case.  Sayre Decl. ¶ 4.  At PBSP, a third pill pass is
an extraordinary staff effort that must have significant benefit
to be justified.  Id.  The new prescription was ordered for seven
days.  Ly Decl. Ex. B.

LVNs Andrsh and Stone were two of the nurses who administered
the Gabapentin.  Plaintiff filed grievances complaining that, on
December 22 and 23, LVN Stone gave him only 14 cc of the drug,
instead of the prescribed 16 cc, and that LVN Andrsh did the same

4

on December 25.  Ly Decl. Exs. C & D.

The Gabapentin was discontinued on December 29, 2009, by FNP Risenhoover and Dr. Sayre's orders, for the reason that it was not medically indicated for Plaintiff's condition.  Sayre Decl. ¶ 25; Ly Decl. Ex B.  As explained by Dr. Sayre in his declaration:

> Mr. Smith's original prescription for Gabapentin in 2008 was for an off-label use of neuropathy.  However, recent medical research has shown that Gabapentin is not truly effective for most cases of neuropathy. Gabapentin is currently only approved for adjunctive therapy for seizures and post-herpetic neuralgia and, as such, have the evidenced base documentation to support use [sic].  Headaches and neuropathic pain are off-label uses of Gabapentin and have no evidence based documentation to support its use [sic].

Sayre Decl. ¶ 6.

In support of his declaration, Dr. Sayre has attached a medical article published in May 2010 that discusses the results of several medical studies on the off-label use of Gabapentin for, among other things, neuropathic pain and migraine symptoms.  Based on these studies, the article concludes that such off-label uses provide questionable benefit and can increase the potential for harmful side effects for the patient.  Sayre Decl. Ex. A.

Dr. Sayre further explains in his declaration that it is CDCR practice "to not prescribe medication for off-label use unless there is documented evidence based need" and it is "established CDCR pharmacy and formulary policy to use evidence based medicine and prescribing practices."  Sayre Decl. ¶ 7.  In support of his statement, Dr. Sayre has attached to his declaration the CDCR policy on off-label use of prescription medications, which provides as follows:

I.   Definitions

Off-label use: use of a drug for an indication not

5

> listed in the package labeling, use of a drug at doses not supported in the package labeling, or use of a drug in the presence of a contraindication listed in the package labeling.

II.   Policy

> The off-label use of a drug shall be based on sound scientific evidence, expert medical judgment, or published literature and should be done in good faith with the safety and best interest of the patient-inmate in mind.  All efforts should be made to utilize drug regimens approved by the Food and Drug Administration before using an off-label drug. A risk-benefit assessment must prove the off-label use would represent a significant medical advantage to the patient-inmate and outweigh all potential negative outcomes.  The practitioner who prescribes a drug is responsible for deciding which drug to use, the dosing regimen and the indication for use in each patient inmate.  The decision should be made based on information contained in the drug's label.

Sayre Decl. Ex. B.

On January 5, 2010, Plaintiff was seen by Dr. Adam.  He complained of severe headaches every one to three months and nerve twitching.  According to Dr. Adam's progress notes of the meeting, Plaintiff told her that he had been prescribed Neurontin (Gabapentin) in 2008, which "helped his nerve twitching" when he was taking 800 mg. twice a day, "but did not help his headaches," and that since his prescription had been discontinued on December 29, "he has had daily episodes of twitching on his face, scalp, throat."  Ly Decl. Ex. F at 1.  Plaintiff asked for a prescription for Gabapentin and to see a specialist for his headaches and nerve twitching.  Compl. ¶ 22.  He also asked for a prescription for Tylenol #3 (with codeine) for his headaches.  Ly Decl. Ex. F at 1.

After examining Plaintiff, Dr. Adam wrote that he suffered from headaches, possibly migraine, occurring only every one to two months and that he did not have neurological symptoms, such as

localized weakness or vision changes, during the headaches.  Ly
Decl. Ex. F at 1.  Based on these observations, she prescribed
Tylenol #3, to be taken as needed for the headaches.  In so doing,
she "warned" Plaintiff that if he used the medication
continuously, instead of only as needed, it would be discontinued;
she expected he would use approximately eight doses a month.  Id.

Concerning Plaintiff's nerve twitches, Dr. Adam noted that,
while he stated that the twitches abate with Neurontin use,
"Neurontin is not medically indicated for this condition."  Ly
Decl. Ex. F at 1.  She also determined that a consultation with a
neurology specialist was not medically indicated.  Decl. Nancy
Adam, M.D., Supp. Mot. Summ. J. (Adam Decl.) ¶ 3.  Dr. Adam wrote
that she would obtain Plaintiff's entire medical chart so that she
could review the neurology consultation he had in 2008 and try to
determine whether the consultation had been for his headaches or
facial twitching, the reason Neurontin had been prescribed, and
what medications previously had been tried for his headaches.  Ly
Decl. Ex. F at 1-2.

On January 13, 2010, Dr. Adam determined that Plaintiff had
requested and received seven doses of Tylenol #3 between January 7
and 13, whereas she had expected him to receive at most eight
doses a month.  She concluded that he was taking the medication
regularly, rather than as needed; therefore, she discontinued the
prescription.  Adam Decl. ¶ 4.

On January 14, 2010, Plaintiff submitted an emergency health
care request asking to have his Tylenol #3 medication reinstated.
Compl. ¶ 135.  On January 27, 2010, he was seen by Nurse Elliott.
He told her that his headaches had returned since the Tylenol #3

United States District Court
For the Northern District of California

had been discontinued, that he was experiencing continued painful nerve twitching, and that he also was having chest pains. Nurse Elliott scheduled him to see a physician for these concerns. Ly Decl. Ex. I.

On February 25, 2010, Plaintiff was seen by FNP Risenhoover in response to his sick call slips. According to Plaintiff, the following occurred at that visit: he inquired why he had not been seen sooner and Risenhoover replied that she "did not think his condition was serious enough to warrant immediate attention . . . ." Compl ¶ 148. Risenhoover also stated, "I don't believe you need Gabapentin for your condition and that medication is not issued by" the CDCR. Compl. ¶ 153. Plaintiff also "attempted to explain to this nurse that he had recently been experiencing chest pain and cramping around his heart area," that in August 2008 he was hospitalized for an irregular heartbeat -- the origin of which had not been determined -- and that he had been advised to tell prison staff to refer him to a cardiologist. Compl. ¶¶ 159-161. He asked Risenhoover to refer him to a cardiologist because his condition was getting worse, but Risenhoover responded that he would have to submit another sick call slip because he could only talk about one issue at a time. Compl. ¶¶ 163-166. Plaintiff asked Risenhoover whether she had reviewed his file prior to his visit. Risenhoover responded, "I don't need to, migraines are not treated with Gabapentin." Compl. ¶ 169. She did not prescribe Plaintiff any medication.

In contrast to Plaintiff's evidence, Defendants present evidence of Risenhoover's progress notes from her February 25, 2010 meeting with Plaintiff, which show that she examined him,

8

reviewed his medical chart, including his neurology consultations in 2008 and his EKG results from December 2009, informed him that Gabapentin was not medically indicated, and prescribed Ergotamine for his migraine headaches and Ibuprofen and Almag (an antacid) for his chest pains. Ly Decl. Ex. J. She also ordered another EKG and chest x-rays. Plaintiff refused the EKG, id. Ex. L at 1; the x-ray was taken on March 10, 2010, and showed that Plaintiff's heart was not enlarged and there had been no change since his last chest x-ray in December 2009. Id. Ex. K.

On March 18, 2010, Defendant RN Escobar responded to Plaintiff's cell when he complained of chest pains. Plaintiff told Escobar that he felt as if he had lost his breath for several minutes. Escobar took Plaintiff's vital symptoms; his pulse was 62.[1] Escobar escorted Plaintiff to the medical clinic and reviewed his file. He noted that Plaintiff's previous x-rays did not show an enlarged heart and that he had no shortness of breath, was not gasping for air, and was speaking clearly. Escobar escorted Plaintiff back to his cell without referring him for further care. Ly Decl. Ex. L.

Later that night, Plaintiff complained of dizziness and shortness of breath. A correctional officer contacted medical staff and Plaintiff was seen by a nurse in the medical clinic who assessed him and concluded that his symptoms did not appear to be cardiac related. Plaintiff was told that he would be put on the sick call list the next day for a doctor's appointment; he was

---

[1] For an adult, a normal resting heart rate ranges from 60 - 100 beats per minute. Sayre Decl. ¶ 8.

United States District Court
For the Northern District of California

given Almacone for indigestion and Ibuprofen for chest pain and was returned to his cell.  Ly Decl. Ex. M.

On March 23, 2010, Plaintiff was seen by a nurse for complaints of cramping around the heart.  The nurse noted that his last chest x-ray, taken on March 2, 2010, was normal.  She gave him Tylenol for pain, advised him to continue to take Almacone for indigestion, and told him she would review his file and discuss his complaints with his physician.  Ly Decl. Ex. N.

On April 1, 2010, Plaintiff was seen by Risenhoover for complaints of chest pains, headaches and nerve twitches.  He requested a renewal of his prior Gabapentin prescription, saying that it worked better than Tylenol #3 for his symptoms. Risenhoover reviewed his medical file; she offered to prescribe Ergotamine, Ibuprofen, Naprosyn and Tylenol for his headaches but he refused, saying that only Gabapentin worked but he would take a prescription for Tylenol #3.  Risenhoover prescribed Tylenol #3 for seven days and told him that she would refer his case to the medical committee for review.  Ly Decl. Ex. P.

On April 1 and 10, 2010, Plaintiff underwent EKGs for his chest pains.  The results were unremarkable.  Adam Decl. ¶ 5.

DISCUSSION

I.   Non-Dispositive Motions

A.   To Enlarge Time and Amend Complaint (Docket Nos. 31, 34)

Plaintiff originally named as a Defendant in this action LVN "A. Anders."  In response to the Court's Order of Service, Defendants' counsel represented that no individual by that name ever had been employed at PBSP.  Consequently, the Court directed Plaintiff to provide the correct name and address for that

United States District Court
For the Northern District of California

Defendant.  Plaintiff moved for an extension of time to provide
the Court with the requested information and, subsequently, after
learning the Defendant's true identity, moved to amend his
complaint to add LVN Andrey Arsh as a Defendant.  Since then, Arsh
has been served with the complaint and appeared as a Defendant in
this case.  Accordingly, Plaintiff's motion for an extension of
time to discover this Defendant's identity is DENIED as moot; his
motion to amend his complaint to name Andrey Arsh as a Defendant
is GRANTED.

     B.    Reconsideration (Docket no. 35)

     Early in these proceedings, Plaintiff filed a motion for a
preliminary injunction directing Defendants to provide him with
Gabapentin.  The Court denied the motion without prejudice because
it had not been served on Defendants and informed Plaintiff that
he could file a renewed motion for preliminary injunctive relief.

     By way of the present motion for reconsideration, Plaintiff
objects to the Court's direction that he file a renewed motion for
a preliminary injunction and asks the Court to decide his prior
motion on the merits.  Plaintiff's request is DENIED as moot
because the Court, by this Order, grants Defendants' motion for
summary judgment.  Therefore, Plaintiff is not entitled to
injunctive relief.

     C.    Discovery-Related Motions

        1.    Subpoena Duces Tecum (Docket no. 27)

     Plaintiff moves the Court, pursuant to Rule 45 of the Federal
Rules of Civil Procedure, to prepare, issue and serve a subpoena
duces tecum on a non-party, Maureen McClean, Chief Executive
Officer of PBSP, for the production of documents pertaining to the

*United States District Court*
*For the Northern District of California*

investigation of his administrative appeals and other complaints
filed by inmates against Defendants.   Defendants object to the
request because Plaintiff has not used proper procedures for the
issuance and service of a subpoena duces tecum, and also because
he has not sought the requested documents from them directly
pursuant to Rule 34.   In response, Plaintiff asserts that, as of
the date of his reply, he has sought the documents from Defendants
and they have objected to his requests on grounds of privilege.

Defendants are correct that the Court is not responsible for
preparing and serving subpoenas for Plaintiff.   Further, since the
filing of Plaintiff's motion the parties have engaged in further
discovery and filed their papers in support of and in opposition
to Defendants' motion for summary judgment.   Based on the record
developed by the parties, the Court finds that the documents
Plaintiff seeks by way of this subpoena duces tecum are not
relevant to a decision on the merits of his claims.   Specifically,
he does not charge any Defendant with the improper denial of an
administrative appeal and, as discussed in more detail below,
complaints brought by other inmates against Defendants are not
relevant to a determination whether Defendants provided him with
constitutionally adequate medical care.   Accordingly, Plaintiff's
motion is DENIED.

       2.   Additional Interrogatories (Docket no. 33)

Plaintiff, having served Defendants Dr. Adam and FNP
Risenhoover with interrogatories and requests for production of
documents and received their responses thereto, moves to expand
the twenty-five interrogatory limit set forth at Rule 33(a)(1).
Defendants object to the request because Plaintiff already has

served on these Defendants three sets of combined interrogatories and requests for production of documents that include twenty interrogatories directed to each of them, he does not state how many additional interrogatories he intends to propound, and he does not make a particularized showing demonstrating the need for additional interrogatories.  The Court agrees.  Accordingly, the motion is DENIED.

3.    Deposition of Dr. Adam (Docket nos. 36, 42)

Prior to the filing of Defendants' motion for summary judgment, Plaintiff moved for leave of court to take the oral deposition of Dr. Adam.  The Court denied the motion as premature because of the parties' failure to meet and confer to resolve the discovery matter out of court.  The Court noted that Plaintiff's right to discovery in this regard could be accommodated by way of written depositions conducted pursuant to Rule 31, and stated that it would modify that procedure to allow the deponents to provide written answers to the written deposition questions.  Thereafter, Plaintiff informed Defendants' counsel of his intent to depose Dr. Adam orally.  Defendants' counsel responded that Plaintiff's questions could be answered through interrogatories or the deposition could be conducted via written deposition, as provided in the Court's order.

Plaintiff then filed the instant motion for leave of Court to take the tape-recorded deposition of Dr. Adam at PBSP.  Defendants oppose the motion and also seek a protective order precluding the deposition.  Specifically, Defendants object that Plaintiff has not complied with Court's discovery schedule for noticing a deposition and that allowing him to depose Dr. Adam orally would

United States District Court
For the Northern District of California

13

impose undue burden and expense on Defendants and the CDCR,
including: transportation of Plaintiff to and from the deposition,
providing security for the deposition, providing the means of
recording the deposition, and transcribing the deposition.
Further, Defendants assert that the information Plaintiff seeks by
way of the deposition either already has been provided to him in
response to his discovery requests or could be provided to him by
way of written deposition.

A plaintiff has no absolute right to attend a deposition in
his action.  Lawful incarceration results in the limitation of
many privileges and rights, including the right under 28 U.S.C.
§ 1654 of parties to plead and manage their own causes personally.
See In re Terry L. Collins, 73 F.3d 614, 615 (6th Cir. 1995)
(citing Price v. Johnston, 334 U.S. 266, 285-86 (1948)).  In
determining whether to permit an inmate to attend pretrial
depositions, the court should consider the costs and security
risks involved in transporting the inmate to the deposition site
and in maintaining his presence at the deposition, the importance
of the testimony of the deponent to the claims alleged, the need
for the inmate to be physically present during the deposition, the
inmate's individual security history, general security issues, and
the availability of alternative means to accommodate the concerns
of both the inmate and the prison officials.  See id. at 615.

The Court finds that in view of the undisputed evidence of
security concerns and expenses detailed by Defendants and
Plaintiff's ability to obtain the information he seeks from Dr.
Adam by other means, allowing him to depose Dr. Adam orally in
this case is not warranted.  Accordingly, Plaintiff's motion is

United States District Court
For the Northern District of California

DENIED and Defendants' motion for a protective order is GRANTED.

    4.   Motion to Compel (Docket no. 52)

    Plaintiff has filed a motion to compel responses to interrogatories and requests for production of documents to which Defendants have asserted objections.  Defendants oppose the motion.

        a.   Accusations/Lawsuits By Other Inmates

    In Plaintiff's interrogatory numbers 2 to Dr. Adam, 2 to FNP Risenhoover, 2 to RN Escobar and 1 to LVN Stone, he inquires whether they have been accused of negligence or cruel and unusual punishment by any inmate.  In interrogatory numbers 3 and 4 to Dr. Adam, 3 and 4 to FNP Risenhoover, and 3 and 4 to RN Escobar he inquires whether they ever have been sued by any inmate and, if so, the nature of the claim asserted in the lawsuit.  In interrogatory numbers 4-6 to LVN Stone he inquires whether any inmate has lodged a complaint against Stone concerning a failure to provide medication.  Plaintiff claims this information is relevant because it will establish Defendants' motive or intent.

    Defendants object to these requests on the grounds they seek character evidence and information that is not relevant or likely to lead to the discovery of admissible evidence, is beyond the scope of permissible discovery pursuant to Rule 26, seeks confidential information that is protected by Defendants' and third parties' rights of privacy, and is unduly burdensome.

    The Court agrees with Defendants that evidence of medical accusations and/or complaints made by other inmates is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence concerning Defendants' motive or intent with

United States District Court
For the Northern District of California

respect to their treatment of Plaintiff.  Plaintiff's claims
against Defendants are based on his own medical treatment.
Accusations of negligence and/or a violation of the Eighth
Amendment or lawsuits filed by other inmates fail to evidence
Defendants' liability toward Plaintiff.  Further, Plaintiff has
not demonstrated that his need for the information, which concerns
the medical care of other inmates, outweighs the privacy rights of
Defendants and the inmates making the accusations.  The requests
are also overbroad as to time and scope and would impose an undue
burden on Defendants.  Additionally, there is no merit to
Plaintiff's contention that information about other complaints
lodged against LVN Stone for failure to provide medication is
relevant to his retaliation claim against Stone, because that
claim was dismissed by the Court.  Accordingly, Plaintiff's motion
with respect to these interrogatories is DENIED.

b.   Defendants' Employment History

In Plaintiff's interrogatory numbers 12 to Dr. Adam, 14 to
FNP Risenhoover, 5 to RN Escobar and 7 to LVN Stone, he inquires
about their employment histories prior to working at PBSP.  In
interrogatory numbers 10-13 to FNP Risenhoover, 6-8 to RN Escobar
and 2 to LVN Stone, he inquires whether they were terminated from
any previous employment.  Plaintiff states he is seeking evidence
that would show whether similar misconduct occurred at any medical
facilities that previously employed Defendants.

Defendants object to these requests on the grounds they seek
information that is not relevant, is not likely to lead to the
discovery of admissible evidence, is beyond the scope of
permissible discovery pursuant Rule 26, and is confidential and

United States District Court
For the Northern District of California

protected under the official information privilege.

The Court finds the requested information is not discoverable because it is inadmissible character evidence and is not relevant to any claim or defense in this case.  Defendants' employment histories do not make the facts alleged by Plaintiff more or less probable and are of no consequence in determining whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs.  Accordingly, Plaintiff's motion with respect to these interrogatories is DENIED.

c.   Defendants' Medical Education

In interrogatory numbers 14 to Dr. Adam and 18-19 to FNP Risenhoover Plaintiff generally inquires about the education required to become a neurologist, nurse practitioner and physician's assistant.  He claims the information is relevant to show that Dr. Adam does not have the education of a neurologist and that FNP Risenhoover has less knowledge than Dr. Adam.  He also claims that FNP Risenhoover's lack of education should have caused her to defer to the neurologist's recommendation.

Defendants object to this request on the grounds that it seeks information that is not relevant, not likely to lead to the discovery of admissible evidence, and is beyond the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff has failed to show how knowledge of these Defendants' educational backgrounds would lead to the discovery of admissible evidence relevant to his claims against them.  As noted by Defendants, Dr. Adam does not contend that she is a neurologist or has the education of one, consequently, she cannot comment on the education required to become a neurologist.  Further, FNP

Risenhoover does not contend that she is a physician.  Defendants provided Plaintiff with showing that Dr. Adam is a licensed physician and FNP Risenhoover is a licensed family nurse practitioner.  Opp'n Ex. H.  Thus, their authority to practice medicine is not contested.

Based on the above, the Court finds Plaintiff is not entitled to receive this information from Defendants.  Accordingly, his request to compel answers to these interrogatories is DENIED.

### d. Medical Records

Plaintiff's interrogatory/document request number 20 to FNP Risenhoover requests a copy of an order written by her on January 13, 2010, discontinuing Plaintiff's Tylenol # 3 medication. Defendants object on the grounds that Plaintiff's medical records are equally available to him and that they are not in possession of any such order.  Further, Defendants included copies of the medical records discussed in their motion for summary judgment as exhibits to the motion.  Thus, to the extent that such records exist, Plaintiff already has, or has access to the documents requested.  In particular, Exhibit H to Defendants' motion contains the medication administration form for the Tylenol #3. It shows that the Tylenol #3 was discontinued on January 13, 2010, by Dr. Adam, not by FNP Risenhoover.

Based on the above, Plaintiff's motion to compel production of this information is DENIED.

### e.   Other Inmates' Medication Administration

Plaintiff's interrogatory number 20 (labeled as 19) to FNP Risenhoover inquires how many inmates in Plaintiff's housing unit at PBSP were receiving medication three times a day on December

United States District Court
For the Northern District of California

22, 2009.  Plaintiff claims this information is relevant to his
retaliation claim against Stone.  As discussed above, however,
this claim against Stone was dismissed by the Court.  Further,
Plaintiff has not shown how evidence concerning whether other
inmates were receiving a third pill pass is relevant to his
medical care.  Accordingly, Plaintiff's motion to compel the
production of this information is DENIED.

f.    Summary

The Court, having reviewed the parties' arguments and
evidence in support thereof, concludes that Plaintiff is not
entitled to an order compelling Defendants to provide him with the
requested discovery.  Further, the Court finds, for the reasons
discussed below, that the merits of Plaintiff's claims are
amenable to decision without such information.  Accordingly, the
motion to compel is DENIED in its entirety.

D.    Motion to Stay Summary Judgment (Docket no. 53)

Plaintiff has filed a motion to stay decision on the motion
for summary judgment pending the completion of ongoing discovery
and his filing of an opposition to the motion for summary
judgment.  Defendants have filed a statement of non-opposition to
Plaintiff's request.

The motion is DENIED as moot because Plaintiff is not
entitled to further discovery and the motion for summary judgment
has been fully briefed by the parties and is ready for decision by
the Court.  Accordingly, the Court proceeds to address the merits
of Defendants' motion for summary judgment.

II.  Motion for Summary Judgment

Plaintiff claims that Defendants provided him with

United States District Court
For the Northern District of California

constitutionally inadequate medical treatment for his headaches, facial nerve twitching and chest pains.

A.   Legal Standard

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson, 477 U.S. at 248 (holding fact to be material if it might affect outcome of suit under governing law).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving

party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

B.   Analysis

1.   Deliberate Indifference Standard

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need.  See id., 974 F.2d at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or

the unnecessary and wanton infliction of pain.  Id.  The existence
of an injury that a reasonable doctor or patient would find
important and worthy of comment or treatment, the presence of a
medical condition that significantly affects an individual's daily
activities, or the existence of chronic and substantial pain are
examples of indications that a prisoner has a serious need for
medical treatment.  Id. at 1059-60.

   A prison official is deliberately indifferent if he knows
that a prisoner faces a substantial risk of serious harm and
disregards that risk by failing to take reasonable steps to abate
it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison
official must not only "be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,"
but he "must also draw the inference."  Id.  In order for
deliberate indifference to be established, therefore, there must
be a purposeful act or failure to act on the part of the defendant
and resulting harm.  See McGuckin, 974 F.2d at 1060.

   Deliberate indifference may be shown when prison officials
deny, delay or intentionally interfere with medical treatment, or
it may be shown in the way in which they provide medical care.
See id. at 1062.  But neither a difference of opinion between a
prisoner-patient and prison medical authorities regarding
treatment nor a showing of nothing more than a difference of
medical opinion as to the need to pursue one course of treatment
over another is sufficient to establish deliberate indifference.
See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004).  In
order to prevail on a claim involving choices between alternative
courses of treatment, a plaintiff must show that the course of

United States District Court
For the Northern District of California

22

United States District Court
For the Northern District of California

1   treatment the doctors chose was medically unacceptable under the

2   circumstances, and that they chose this course in conscious

3   disregard of an excessive risk to the plaintiff's health. Id. at

4   1058. Further, individual defendants cannot be held liable for

5   acting with deliberate indifference when they are unable to render

6   or cause to be rendered medical treatment because of a lack of

7   resources that is not within their power to cure. Peralta v.

8   Dillard, 704 F.3d 1124, 1129 (9th Cir. 2013).

9           2.   Plaintiff's Claims

10              a.   Headaches and Facial Twitching

11   Defendants maintain that Plaintiff's headaches and facial

12   twitching do not constitute a serious medical need, but offer no

13   argument to support their contention. Based on the evidence

14   detailed above, the Court finds Plaintiff has shown that he has a

15   serious medical need.

16              i.   LVN Stone and LVN Andrsh

17   Plaintiff alleges LVN Stone and LVN Andrsh were deliberately

18   indifferent for allegedly administering 2 cc less than the correct

19   dosage of Gabapentin on three occasions. Even when the facts are

20   viewed in a light most favorable to Plaintiff, they fail to

21   establish that these Defendants acted with deliberate indifference

22   to Plaintiff's serious medical needs. Instead, the facts

23   establish that Defendants' alleged actions were, if anything,

24   isolated occurrences of neglect that do not rise to the level of

25   an Eighth Amendment violation. See O'Loughlin v. Doe, 920 F.2d

26   614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests

27   for aspirins and antacids to alleviate headaches, nausea and pains

28   is not constitutional violation; it may constitute grounds for

medical malpractice but does not rise to level of unnecessary and wanton infliction of pain). Negligence is insufficient to establish deliberate indifference to serious medical needs. <u>See Wood v. Housewright,</u> 900 F.2d 1332, 1334 (9th Cir. 1990). Moreover, Plaintiff concedes that Defendants' actions did not result in "any measurable injury" to him. Opp'n at 13:5-6.

Because Plaintiff has failed to raise a triable issue of material fact with respect to whether Defendants Stone and Andrsh acted with deliberate indifference to his serious medical needs, summary judgment is GRANTED to these Defendants on this claim.

### ii.  Dr. Adam and FNP Risenhoover

Plaintiff claims that Defendants Dr. Adam and FNP Risenhoover provided constitutionally inadequate medical care by refusing to renew his Gabapentin prescription to treat his headaches and facial nerve twitching. He argues that, because such medication was recommended by a neurologist and prescribed by prison doctors at Corcoran, Defendants acted with deliberate indifference by not following suit. Defendants contend, however, that their actions were reasonable and in accordance with CDCR policy and accepted medical standards of care. In support of their assertions, Defendants have provided the declarations of Dr. Adam and Dr. Sayre and supporting documents from Plaintiff's medical records.

According to the evidence provided by the parties, Plaintiff's original prescription for Gabapentin in 2008 was for an off-label use for neuropathy. Contrary to Plaintiff's assertions, the evidence does not show that prior to his transfer to PBSP he was prescribed Gabapentin by prison doctors at Corcoran to treat what had been diagnosed as migraine headaches. Instead,

the record shows that after the neurologist's recommendation that
Plaintiff be treated with Lyrica, a drug that is used to treat
pain from damaged nerves, prison doctors at Corcoran prescribed
Gabapentin "for facial twitching," and prescribed Tramadol, a pain
reliever, for Plaintiff's headaches.  Opp'n Ex. K at 193.
Further, Plaintiff has not presented medical evidence that calls
into question Defendants' informed decision that Gabapentin was
not medically indicated for Plaintiff's condition.  In particular,
there is no dispute that the use of Gabapentin for treatment of
neurologic pain is an off-label use of the drug, that CDCR policy
prohibits the prescription of medications for off-label use unless
there is some documented evidence-based need, and that recent
medical research has shown that headaches and neuropathic pain are
off-label uses of Gabapentin and there is no evidence-based
documentation to support such use.  Sayre Decl. ¶ 6.

Thus, despite the fact that Gabapentin was prescribed by
prison doctors at Corcoran, Dr. Sayre, Dr. Adam and FNP
Risenhoover determined that it was not medically indicated in this
case.  Plaintiff has not presented medical evidence that calls
into question the reasonableness of their medical opinions in this
regard.  Although he complains that the medications he was
provided for his headaches and facial twitching were not as
beneficial to him as Gabapentin, he concedes that it was up to the
discretion of his medical providers to prescribe Gabapentin.
Opp'n at 16:9-16.  The evidence shows that Defendants took
reasonable steps to treat his symptoms, addressed his complaints
in a timely manner, and adjusted his medications in accordance
with their accepted medical use.

1    Based on this record, the Court finds that Plaintiff has not

2   raised a genuine issue for trial with respect to whether Dr. Adam

3   and FNP Risenhoover acted with deliberate indifference to his

4   serious medical needs.   Accordingly, summary judgment is GRANTED

5   in their favor.

6                   b.   Chest Pain

7        Plaintiff alleges that RN Escobar was deliberately

8   indifferent for not ordering an EKG, a cardiology consultation or

9   admittance to the emergency facility for his enlarged heart and

10   chest pains.   As an initial matter, Plaintiff has not presented

11   evidence that raises a triable issue of material fact with respect

12   to whether he indeed suffers from an enlarged heart or any heart

13   condition that rises to the level of a serious medical need.

14   Instead, the evidence shows that x-rays of Plaintiff's chest taken

15   in December 2009 and March 2010 were unremarkable, as were the

16   results from EKGs he underwent 0n April 1 and 10, 2010, for his

17   chest pains.   Ly Decl. Ex. K; Adam Decl. ¶ 5.

18        Even if Plaintiff's medical need in this regard is serious,

19   he has not presented evidence that substantiates his contention

20   that RN Escobar acted with deliberate indifference thereto.

21   Specifically, the undisputed evidence shows that when Escobar was

22   called to respond to Plaintiff's cell for complaints of chest pain

23   and loss of breath on March 18, 2010, he took his vital signs,

24   noted that they were well within the normal range and that

25   Plaintiff had no shortness of breath, was not gasping for air and

26   was speaking clearly.   Escobar escorted Plaintiff to the medical

27   clinic and, upon reviewing Plaintiff's file, noted that his

28   previous x-rays did not show an enlarged heart and that he had

United States District Court
For the Northern District of California

26

refused to attend his most recently scheduled appointment for an
EKG.  Ly Decl. Ex. L.  Based on this assessment, Escobar
reasonably determined that Plaintiff's symptoms were not cardiac
related.  Further, when, later that night, Plaintiff complained of
dizziness and shortness of breath, he was assessed by a different
nurse, who similarly determined that his symptoms did not appear
to be cardiac related and gave him Almacone for indigestion and
Ibuprofen for chest pain.  Id. Ex. M.

     Based on the above, the Court finds that Plaintiff has
failed to raise a triable issue of material fact with respect to
whether RN Escobar acted with deliberate indifference to his
serious medical needs.  Rather, the evidence, when viewed in the
light most favorable to Plaintiff, shows that Escobar's actions
were reasonable under the circumstances and that Plaintiff did not
suffer injury as a result thereof.  Accordingly, summary judgment
is GRANTED to Defendant Escobar on this claim.

     3.   Qualified Immunity

     All Defendants argue that they are entitled to qualified
immunity.  The defense of qualified immunity protects "government
officials . . . from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The
threshold question in qualified immunity analysis is: "Taken in
the light most favorable to the party asserting the injury, do the
facts alleged show the officer's conduct violated a constitutional
right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The relevant,
dispositive inquiry in determining whether a right is clearly

1  established is whether it would be clear to a reasonable defendant

2  that his conduct was unlawful in the situation he confronted.  <u>Id.</u>

3  at 202.

4      On the facts presented herein, viewed in the light most

5  favorable to Plaintiff, Defendants prevail as a matter of law on

6  their qualified immunity defense because the record establishes no

7  constitutional violation.  Even if a constitutional violation did

8  occur, however, Defendants reasonably could have believed their

9  conduct was lawful.  Specifically, it would not have been clear to

10  Defendants that they failed to take reasonable steps to abate a

11  substantial risk of harm to Plaintiff by providing him with the

12  above-described care and treatment for his migraine headaches,

13  facial twitching and chest pains.

14      Accordingly, Defendants are entitled to qualified immunity,

15  and their motion for summary judgment is GRANTED for this reason

16  as well.

17                          CONCLUSION

18      For the foregoing reasons, the Court orders as follows:

19      1.  Summary judgment is GRANTED in favor of all Defendants.

20  (Docket no. 50.)

21      2.  Plaintiff's motion for a subpoena duces tecum is DENIED.

22  (Docket no. 27.)

23      3.  Plaintiff's motion for an enlargement of time is DENIED

24  as moot.  (Docket no. 31.)

25      4.  Plaintiff's motion to expand the interrogatory limit is

26  DENIED.  (Docket no. 33.)

27      5.  Plaintiff's motion for leave to file an amended

28  complaint is GRANTED.  (Docket no. 34.)

**United States District Court**
For the Northern District of California

1    6.   Plaintiff's motion for reconsideration is DENIED.

2  (Docket no. 35.)

3    7.   Plaintiff's motion for leave to depose Dr. Adam orally

4  is DENIED.  (Docket no. 36.)

5    8.   Defendants' motion for a protective order is GRANTED.

6  (Docket no. 42.)

7    9.   Plaintiff's motion to compel is DENIED.  (Docket no.

8  52.)

9    10.  Plaintiff's motion to stay summary judgment is DENIED as

10  moot.  (Docket no. 53.)

11    The Clerk of the Court shall enter judgment in favor of

12  Defendants and close the file.  All parties shall bear their own

13  costs.

14    This Order terminates Docket nos. 27, 31, 33, 34, 35, 36, 42,

15  50, 52 and 53.

16    IT IS SO ORDERED.

17  Dated: 3/26/2013                    _____

                                        CLAUDIA WILKEN

18                                      United States District Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California